Good morning, Your Honors. I'm going to direct my remarks to the 2113 argument, which is the argument about whether or not the aspiratation was substantial or not, or within the meaning of Title 18 of the United States Code, Section 2113. Our position is that the aspiratation for the purposes of 2113E must be substantial to justify a departure from the underlying bank robbery. In this case, it was an armed bank robbery, 2113A and D. In other words, the actions of the robber, we believe, must be more than routine. They must be substantial. What the robber did in this case with respect to the critical witness whose victory lay, the security guard, is our position was part of a routine bank robbery. I don't understand that concept. You're switching from substantial to routine. What's a routine bank robbery? The guy in this case was outside the bank and was forced from outside in the parking lot into the bank. Now, a routine bank robbery in all the TV sitcoms and movies and all my experience in bank robberies is that the security guards are inside the bank. There may be some movement inside the bank, but this case involves moving from an outside public environment into an enclosed building. How does routine fit into substantial? Let me answer your question by first saying the way I look at it is on a spectrum. You're going to tell me I've been watching the wrong movies. No, no. On a spectrum, if you look at one end of the spectrum, an extreme end of the spectrum, I would say where it's clear there's a kidnapping, where someone, say, takes a teller and uses her as a hostage in a getaway or goes to a teller's house and gets the teller and brings the teller to the bank and forces her to open the door and go to the safe and do all those things. That's clearly kidnapping under 2-1-1-3-E. On the other end of the scale, I would say a robber, maybe like the robber in your movies, goes to the bank. That bank didn't happen to have a security guard posted outside. Maybe the security guard was inside. The robber goes in, says to teller number one at the window, clear out your drawer and go over there and get drawer number two and drawer number three and go to the vault and maybe he goes along with her. That is the routine bank robbery that we would probably normally see on TV, right? And I would put that at the other end of the extreme spectrum. What I'm talking about in this case is where that line should be drawn on adding the 10-year mandatory minimum, the additional enhancement under 2-1-1-3-A, to what is conduct that falls past that line? What is conduct that makes that forced accompaniment not part and parcel of the underlying robbery? And I would say in my analogy on the spectrum with the teller who goes from window one to window three to the vault, that's part of the underlying robbery. Our case I'm arguing is on that side of the 2-1-1-3 spectrum. In other words, does not justify a 2-1-1-3 conviction because in part because of the facts. And I just want to state what the facts were at the trial. The bank hired a guard, a Pinkerton guard. There were two of them. They switched turns being outside the bank. They were still on the bank property. In fact, the bank had a little path that went around it. I think it was referred to in the trial as a little sidewalk. But it's the path that leads up to the bank doors. It's not the public property. It's the bank property. And right adjacent... It's outside. I mean... It's outside the doors. Right. Is it a parking area? I mean... The customers, I would assume, would park in their slots and maybe walk in those front doors. So the robber comes up behind that guard on that path and forces him to go inside. By the word force, I mean he has a gun. The guy doesn't see the gun. He doesn't poke him with the gun. He tells him to go inside. And the guy moves because he doesn't want to get shot. He's scared. He lies down immediately inside the front door on the doormat. And that's clear from the photos in the bank property. Just right there. He never moves another inch. So it's a matter of feet from the path that they move down to inside the front doors. Counsel, what was the instruction that was given? The instruction was, and I believe the government cited it in its brief, was really merely the language of 2113E that talked about merely forced accompaniment. 2113 requires a forced accompaniment. There was no specificity given to the jury in terms of a determination of what's forced accompaniment as a part maybe in comparison to what's routine. So essentially what I'm asking you to find is that as a matter of law, the facts in this case did not support forced accompaniment. What cases do we have in our circuit, if any? The only case we have is the district court case Sanchez that was written by Judge Tashima. The case that he cites from the Ninth Circuit. And within his opinion, I'm sorry? How about Jones? He relies on that case. Now, there's much support for my position. First, I would say that the underlying intent of 2113E, which is described, and the purpose is discussed in the Etheridge case as well as the Marks case, talking about how this statute, 2113E, envisage making it a federal crime to kill or kidnap anyone in an attempt to avoid escape or imprisonment or arrest for bank robbery. It's clear from the legislative intent that there was more required than the conduct that is part of the underlying bank robbery. It seems to me that all of that, I don't see spectrum, substantial, routine, or any of those words or concepts written in the plain language of the statute. So how do we get beyond that? Well, I think first you can look to the legislative intent. Well, not if the language is clear. Oh, I'm sorry to interrupt. One of the things that the Marks case discussed is how the plain language talked about accompaniment without consent, and it then went on to talk about how the legislative history required more. It required, and in fact the Marks case, the reasoning of which I think is solid, is that there's a reference, or I would say comparison, to the kidnapping statute in Title 18, Section 1201, which requires an unlawful seizure or holding. In other words, more than just movement. I guess my problem is if that's easy to put into a statute, if that's what Congress intended to do, it could have said if someone is kidnapped. I mean, they could have said that, but didn't. Well, the language that they used, though, forced accompaniment is the kidnapping enhancement for the bank robbery. The underlying intent is. It's a good shorthand way to refer to it. I agree with you. But I guess I'm just saying the statute itself just says forced accompaniment. It doesn't have all these other spins or glosses that you want us to write on to it. Well, I think what I'm asking for is that the court look at the purpose behind the enhancement to it, and the court then look at how is a jury to decide whether something is forced accompaniment within the meaning of 2113E or part of the underlying crime itself. How do they make that determination? I don't know. We know that the guard didn't go in because he thought it would be fun. But I would say. To keep from getting shot. And I would say that's exactly why the tellers move from window one to window three or to the vault. All circumstances which are part of an underlying 2113A or if there's a gun, a D as well. Counsel, how do the other circuits line up? Mark's case, I think, comes out of the 10th. What do we know from other circuits? Well, many of the cases that are cited in the other circuits, like that the government cites in its brief, like Bauer from the 11th Circuit, discusses this difference between routine and forced accompaniment. Now, factually, it comes down differently than the facts in our case because the facts were different there. There, Robert took a hostage in the face of a police response to a robbery and essentially was using those two bank employees first to try to get away. When he saw that the police response was overwhelming, he sent one of the employees out with a gun to say, okay, I'm going to surrender. And I would say that did ratchet up the level of risk. One of the things that I'm saying is that we should have some sort of a test with a number of factors. And that's why I think the analysis in Sanchez is good because it's not a bright-line rule because from case to case, things are going to differ. I'd like to come back to Judge Reimer's question. We're dealing with a statute which on its face doesn't have any qualifiers in it. And yet in Jones, this circuit construed in response to the government, not in response to the government's argument that was in Sanchez. In Jones, this court has assumed, albeit deciding on accomplice liability, that it was a federal statute that dealt with killing or kidnapping in the course of a robbery. That's how it explicitly read and understood this subsection. And then in Sanchez, the government itself argues, at least according to Judge Tashima's opinion, that this offense is similar to the federal statutory crime of kidnapping. So both in this circuit and in the government at the time of Sanchez, the assumption was that the forcible accompaniment was the functional equivalent of kidnapping. Now, it doesn't say that in the plain language of the statute. So what do we do with that? Well, I think- Once you introduce a kidnapping element, then Judge Tashima's attempt to put some standards into the mix makes some sense. But I think Judge Reimer's made the point, and I'm concerned about it too, is on the face of the statute it just talks about forcible accompaniment. Well, I think you have to see it as more than accompaniment without consent in an ordinary bank robbery sense. And that's why I think what Judge Tashima did is he looked at the legislative intent and then he looked at the purposes behind it. And he made the comments in his opinion about if you don't do that, then it's just left to the vicissitudes of the prosecutorial agency. We rarely see 2113Es. I looked through the case law to find out in all these bank robberies we ever see, where is there ever a 2113E? And it seems to me that should not be left just to whether or not a prosecutor's office decides that we're going to charge everything we could charge, or we're going to be overbearing, or one decides to do it and one doesn't. We have to have some standard. And I think that's part of why he looked at the legislative intent, to see that this 10-year mandatory minimum required something more. And it came about because of all the kidnappings and killings that were happening on bank robbery getaways. And one of the things that I would urge you to do in looking at adopting a test for how can a termination be made, whether it was an aspartation that is substantial, meaning more than the underlying bank robbery or not, is look at the different categories of offenses that come up within the bank robbery. Because I think one of the factors is if one of the categories of the offenses is committing the offense, and the second is in avoiding apprehension, and the third is in freeing yourself from confinement, maybe escape from a jail, the test might be different in those different circumstances. But those different circumstances do play into how someone should look at whether something's substantial and therefore more than the underlying offense or not. Well, Judge Tashima doesn't, you're coming back to this routine distinction. And that's where I now am having some problems. If you want to suggest that Judge Tashima laid out a standard we should adopt, I'm having trouble understanding why in this case it isn't satisfied. He doesn't talk about whether it's routine or not. He says it should be measured by duration, distance, and any change in environment. So if you take those factors and apply them, why don't they apply here? Well, my position would be that even under that Sanchez test, that these facts don't amount to a 2113E. It was a matter of only a few feet. A few feet? How many feet? There's no exact distance in the trial record, but a few parking stalls. Well, from outdoors to indoors, change of environment. When I said public, it wasn't a question of whether he was on a public sidewalk. He was out in an open area. Chances to escape, to be observed by others. But the question of the change of environment really has to do with, and this addresses Judge Fletcher's question about some of the other circuit law cases, about Turner, I think was a Fourth Circuit case. And they talk in those cases about this change of environment, and that being something to look at. And the change of environment really has more to do with, is the person who is with the bank robber being put in a position of isolation or being taken to a place where they're sort of at the mercy of the robber. In other words, like in an empty building or taken to a vault where there's just the robber with the gun. In this case, my position is that moving the guard inside with him did not raise the risk to the guard any more than was there present anyway in the underlying robbery. The robber had a gun. He was going to get people to move around in the bank because he had a gun. In other words, nobody was going to not go to teller drawer number three if they were at number one or not go to the vault. So the underlying risk was already there. The change of environment did not increase the risk. In fact, what happened is the guard moved just inside the door and laid down just as the robber told him and never moved another inch. It was a matter of a couple of seconds to walk down those few car lengths. It was a matter of feet to walk those few car lengths. He was not isolated or out of sight. It was all within, I guess, what I consider sort of the curtilage of the bank, although I think that even all the cases cited by the government don't urge a test to draw a property line. I think it's a number of factors that you have to look at. So I would say even though factually some of the government's cases can be distinguished, they still support the defense argument in the sense that courts have tried to come up with a test to make a determination of whether or not something is part of the underlying offense or additional and separate. And in addition to those arguments, and I want to reserve a couple of minutes for response, so in addition to those arguments, I would say that what supports my argument is the analogy to 1201, the kidnapping statute, which requires an appreciable holding more than an incidental part of an underlying crime, and as well the California Penal Code kidnapping statute, which requires more than something is part of the underlying offense. And if I could, I'd like to reserve the rest of my time for response. Thank you, Mr. Rafael. Good morning, Your Honors. May it please the Court, Tony Rafael on behalf of the United States. Your Honors, I want to begin by explaining or clarifying some of the facts in this case with regard to where the security guard was standing outside the bank. Mr. Bednarski mentioned that he was standing a few feet outside. Now, when the security guard was on the stand, and his testimony is starting on page 79 of the government's expert record, he was shown Exhibit 44, which is an aerial photograph of the bank and the parking lot, and he was asked to show the jury where he was standing at the time that the bank robber came behind him. And Mr. Allais stated, and he showed the jury, that he was standing at the end of the photograph. And when you look at Exhibit 44, Your Honors, what you'll see is that in front of the main entrance to the bank, you have a concrete area. Then you have car slots that are facing the bank. And then beyond that, you have the parking lot. And he pointed to the end of the photograph at the edge. So essentially, you have the concrete area, a car length or so in front of the bank, and another parking lot area right beyond the parking slots facing the bank. That's more than a few feet. That's more than a couple of seconds. And what you see, Your Honors, in the surveillance video that were provided to the jury, is that as he walked him through, as he entered the bank with Mr. Allais, the defendant pushed him down. So you have the distance from the time he accosted him, outside the bank, beyond the parking slots, all the way into the bank. What do you do about our musings in several cases that this is analogous to kidnapping? If I may, Your Honor, when Judge Toshima decided the Sanchez case in January of 92, there was a Jones case from the Ninth Circuit. But the Jones case did not really deal with the extent of the aspiratation. He used it in more than just Jones. Right. And, of course, two months later, Your Honors, the Eleventh Circuit came down with Bauer. And Bauer rejected the notion that you need kidnapping elements, that you need to look at the distance or the time. And Bauer, that's when the robber walked with the two victims from the back of the bank to the front. And Bauer said, that's enough. Now, two years later, the Fifth Circuit came down with Reed. And in Reed, the defendant accosted the victim right as the victim was unlocking the front door, right at the front door of the bank, and walked inside with him, deactivated the alarms, went and got the money, and then handcuffed the victim in the bank and left. And the defendant in that case made the same argument, that his actions were simply incidental to the bank robbery. And the court in Reed, again, relying on Bauer, rejected that notion. And the court specifically said, what supports the forced accompaniment in this case is the defendant taking the victim from the outside to the inside. All the other movements in the bank, we're not going to rely on for this. And the court noted that there's going to be many cases where the movements of the victims inside the bank are orchestrated by the movements of the bank robber. In this case, the court said, however, we're satisfied that taking the victim from outside the bank to inside was enough. And just a year or two later, the Seventh Circuit came down with Davis. The same facts, Your Honors, the same facts, the same holding, rejecting Marx and rejecting Sanchez, which is what the defendant in those cases relied on. And again, the Seventh Circuit said, taking him from outside to the inside is enough. And Your Honors, I do want to bring up to the court's attention, about a week or so after the government filed its response in this case, and this case came to my attention last night as I was doing some last-minute prep. It's a Fourth Circuit case, Your Honor. I gave a copy to Ms. Bednarski earlier this morning. I only got it last night. It's United States v. Turner, decided on November 16th of 04, 389F3-111. I do have an extra copy. And in that case, Your Honor, the defendant walks into the bank, goes up to the bank manager right before closing time, lifts his shirt, shows the bank manager the gun. Then he tells the bank manager, let's get some money. And the two of them walk to the vault. No one else notices anything inside the bank. He gets the money from the vault, leaves the bank manager inside the vault, and then comes out. And on the way out, that's when he tells everyone else, this is a robbery. All of you go to the vault. And the Fourth Circuit, in that case, also relying on Bauer and on Davis, stated, kidnapping elements are not required in this case. The movement. And this is where the Fourth Circuit's at. It's the sustained focus. The time where you took the victim from the bank into the vault, the victim was at the mercy of the defendant. Just like Mr. Lay, in this case, was at the mercy of Mr. Strogan as he walked from the parking lot into the bank. Every circuit court, Your Honor, with the exception of the Tenth Circuit in 1973, has rejected the kidnapping elements. Well, no. I mean, we didn't. And the government argued kidnapping to Judge Tashima. So, but in Jones, we didn't reject kidnapping. It was assumed that, in fact, that's exactly what the statute was all about. Now, I agree. I didn't focus on this issue. But not only Jones, but follow on to Judge Tashima, the government's arguing it now. Granted, that's not binding on us. It's a district court opinion. But still, we didn't. There's no Ninth Circuit case that has rejected it. Truly, Your Honor. If anything in the Ninth Circuit, it has leaned in favor of saying it's something more than simple forced accompaniment for, you know, a couple of feet or whatever. So what is the standard then? Are you saying on the facts of this case, movement from outside to inside, that's all we need to deal with here and that that's enough under Davis and the other cases? I guess let me be more specific. Is it the government's position, which Judge Tashima noted in Sanchez, government there was arguing that the aspiration need only be more than slight. Is that what the government argues here? Or are you arguing for something greater or even lesser than that? In looking at the cases since Sanchez, I think the proper test is whether there is a forced accompaniment between the victim and the defendant coupled with a sustained focus. And what the sustained focus means is that inherent is that you have more than a small change of movement. It's more than simply the bank robbery itself. And this court, Your Honor, does not have, based on this case, does not have to decide whether movement within the bank, whether the movement in Sanchez would have been enough. What this court has before it is a movement from outside the bank, several feet away, several car lengths away into the bank, Your Honor. Is the significant factor for you outside to inside? What if he'd been at the door, moved in, made to lie down? Again, Your Honor, I don't think... Can you say yes or no? I can't say that movement from outside to inside is per se forced accompaniment in all cases. As Your Honor just pointed out, what if the security guard was standing holding the door and the defendant walked up, grabbed him, forced him to go inside or just open the door literally one or two feet and then released him? Maybe in that case, under those circumstances where he doesn't have the sustained focus on the victim, it's not forced accompaniment. In both cases, what's happening is he wants the guard immobilized while he does the robbery. That's what he wants. So I'm not sure how fine you want us to draw this. Your Honor, the government is not asking that the court reads the statute so broadly that every garden-variety bank robbery or TV bank robbery becomes forced accompaniment. There's always going to be movements within the bank, the tellers moving around. As the courts in Reed stated and in Turner, in this case, Your Honor, the forced accompaniment question was submitted to the jury, and the jury returned a special verdict finding, in addition to the 2113 A and D, that the defendant forced the guard to accompany him. It was a factual determination based on that, Your Honor. Could you explain then what you meant by sustained focus? I didn't understand what that means. You're obviously saying, you just said, some movement, even if there's coercion associated with it, isn't necessarily enough. Okay, so we're up above just the mere fact of going from point, you know, a few feet just to necessarily get where the victim would have to get to accomplish the robbery, whether it's bank robbery or whatever else. The question then is, what do you mean by sustained focus? Sustained focus is where the defendant spends enough time with the victim during the movement where the victim now is placed at the mercy of the defendant, as the Turner court stated, Your Honor. This is essentially, this is about the defendant going up to the victim and saying, you're coming with me. It's me and you. If I go down, you go down. And that's exactly it, Your Honor. You don't see, one reason why you don't see the 2113A statute is because there aren't that many cases. The ordinary bank robberies do not involve the movements, do not involve grabbing someone from the parking lot, taking them into a bank, taking someone from the bank outside or taking them to the vault. And that's why we don't see that many decided cases on 2113A. Your Honor, I do want to also point out one other Ninth Circuit case which we cited in our brief. That's the, I think, the Fella Fine case, 1974. In Invicta, in that case, Your Honor, this is where the Ninth Circuit decided that or held that force accompaniment is an enhancement under 2113A and D. And in that case, the court in Invicta gave an example of what would be 2113E violation. And the example was the defendant finds the bank manager or the employee on the street. He walks him, forces him to the bank to unlock the door to go inside. That was the example the court gave in Invicta. It didn't look at the distance. It didn't consider the kidnapping elements in deciding whether that was forced accompaniment. Okay. Unless the court has any other questions. I do. Thank you. Thank you, Your Honor. Thank you, Your Honor. It seems to me that the government's test is not, they're not suggesting the Davis test where no matter how minimal the movement is, it's within 2113E. It seems to me that what the government's suggesting is something more like along the lines of Bauer. And my position would be that Bauer supports us in the sense that there's no bright line rule. It does suggest this difference between routine and forced accompaniment. The Reed case similarly follows that line of thought. The Turner case, which the government just offered to the court today, also makes this distinction between routine and something amounting to forced accompaniment within the reasoning of 2113E. There was no, I'm not really sure what the government means by its phrase sustained focus. It seems that any time you would tell a teller go to window number three or go to the vault, you could argue that's a sustained focus so that that can't be a test in terms of whether or not it amounts to forced accompaniment. It seems to me that the question of the movement should be tied to the question of is there a risk of increased danger. And that's what's important in the substantiality of the movement. And again, my argument would be that moving him inside and telling him to lie down did not increase the danger to him. There's no support for the government's argument that there was some danger of confrontation outside the bank, that argument they make in their brief. There's just no factual support for it. Essentially, just to clearly state before I finish, what we're saying is that the aspartation must be substantial to justify a departure from the underlying 2113A or D. We would urge a test along the lines of Sanchez. But perhaps one of the factors that should also be considered in terms of Sanchez is the purpose of the movement. Here, the movement was attenuated from the actual robbery. I mean, he moved him inside. There's no direct evidence of the intent, but I think you could infer from it that the movement would be so that the guard wouldn't run away and make a phone call, I guess. But there is a direct relationship between the movement and the actual accomplishment of flight or the accomplishment of getting away with the robbery during the commission of the robbery in some of these cases that just doesn't exist here. Thank you very much. Thank you, counsel, for your argument. The matter just argued will be submitted.
judges: B. Fletcher, Rymer, Fisher